1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT J. BALLARD, | ) | Case No. CV 05-7258-JTL |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

On October 11, 2005, Robert J. Ballard ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of his application for disability insurance benefits. On October 31, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on April 16, 2006, defendant filed an Answer to Complaint. On June 9, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On April 16, 2003, plaintiff filed an application for disability insurance benefits. (Administrative Record ["AR"] at 85-87). In his application, plaintiff claimed that, beginning on January 1, 2003, pain in his neck and back prevented him from working. (AR at 85, 32). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 73-78, 80-83). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 84).

On October 13, 2004, the ALJ conducted a hearing in Orange, California. (AR at 280-96). Plaintiff appeared at the hearing with counsel and testified. (AR at 283-95). On January 12, 2005, the ALJ conducted a supplemental hearing. (AR at 297-326). At the hearing, plaintiff appeared with counsel and testified. (AR at 309-16). Joseph Jensen, M.D., a medical expert, and Stephen Berry, a vocational expert, also appeared and testified. (AR at 300-09, 316-24).

On February 3, 2005, the ALJ issued her decision denying benefits. (AR at 31-37). In her decision, the ALJ concluded that plaintiff suffered from the following severe impairments: history of cervical spine fracture, status post posterior fusion C2-3, status post anterior discectomy and fusion C5-7, and lumbar strain/sprain. (AR at 34). According to the ALJ, however, these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (Id.). The ALJ also found that, based upon his residual functional capacity, plaintiff retained the capacity to perform work as a cashier, assembler, and inspector. (AR at 35). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security

2

Act.  (AR at 35).

On February 19, 2005, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision.  (AR at 22).  On September 22, 2005, the Appeals Council affirmed the ALJ's decision. (AR at 4-7).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the Joint Stipulation:

1.   The ALJ failed to properly consider the opinion of the treating physician.

2.   The ALJ failed to properly consider the testimony of plaintiff.

3.   The ALJ failed to properly find that plaintiff suffered from a severe mental impairment.

4.   The ALJ improperly relied on the testimony of the vocational expert.

**STANDARD OF REVIEW**

The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson,

402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  <u>Green v. Heckler</u>, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.    <u>The Sequential Evaluation</u>**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (1991); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).  At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity.  <u>Id.</u> at 140.  At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities.  <u>Id.</u> at 140-41.  Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity.  <u>Id.</u> at 141.  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  <u>Id.</u>  If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past.  <u>Id.</u>  If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience.  <u>Id.</u> at 142.  The claimant is entitled to disability

4

benefits only if he is not able to perform such work.  <u>Bowen</u>, 482 U.S. at 142.

**B.   <u>Treating Physician's Opinion</u>**

Plaintiff asserts that the ALJ failed to give proper consideration to the opinion of plaintiff's treating physician, Su Young Pak, M.D.  On August 18, 2003, Dr. Pak, who specializes in internal medicine and diagnostic radiology, diagnosed plaintiff with cervical neuropathy with a guarded prognosis.  (AR at 126-27).  On August 13, 2004, Dr. Pak completed a Cervical Spine Residual Capacity Questionnaire on plaintiff.  (AR at 139-44).  Dr. Pak diagnosed plaintiff with lumbar radiculopathy and cervical fusion with a guarded prognosis.  (AR at 139).  Dr. Pak also found that plaintiff suffered from chronic pain and a significant limitation of motion.  (<u>Id.</u>).  He placed severe limitations on plaintiff's ability to perform the most basic physical activities.  (AR at 143).  Overall, Dr. Pak found that plaintiff was incapable of even "low stress" jobs and that his impairments lasted or could be expected to last for at least twelve months.  (AR at 141).

The ALJ rejected Dr. Pak's assessment for several reasons. First, the ALJ stated that Dr. Pak failed to cite objective findings that were consistent with the assessed limitations, nor did he explain how he arrived at his decision.  (AR at 33).  The ALJ further noted that plaintiff's last physical exam the prior year was relatively benign and there had been no substantial findings in the interim. (<u>Id.</u>).  Finally, the ALJ reasoned that the lack of objective findings suggested that Dr. Pak was more of an advocate assisting plaintiff in obtaining disability benefits.  (AR at 33).

///

### 1.   Lack of Objective Clinical Findings

The ALJ gave limited weight to Dr. Pak's opinion based upon the alleged lack of objective findings that were consistent with the degree of limitations Dr. Pak assessed.  (AR at 33).  The Ninth Circuit permits an ALJ to rely on an absence of objective findings to reject a treating physician's opinion.  <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide specific and legitimate basis for ALJ to reject treating physician's opinion); <u>Buckhart v. Bowen</u>, 856 F.2d 1335, 1339 (9th Cir. 1988) (proper to disregard uncontroverted treating physician's opinion when he fails to provide objective descriptions of medical findings); <u>cf.</u> <u>Embrey v. Bowen</u>, 849 F.2d 418, 421 (9th Cir. 1988) (improper to reject treating physician's opinion where he provided at least some objective observations and laboratory and x-ray testing in addition to subjective opinions).

Nevertheless, an ALJ may not reject a treating physician's opinion for lacking supporting clinical data or explanation without first re-contacting the physician to determine whether such supporting clinical data exists.  In particular, 20 C.F.R. 404.1512(e)(1), in pertinent part, states:

> We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, <u>the report does not contain all the necessary</u>

<u>information, or does not appear to be based on</u>

<u>medically acceptable clinical and laboratory</u>

<u>diagnostic techniques.</u>

20 C.F.R. 404.1512(e)(1) (emphasis added). Thus, unless an ALJ complies with his duty to re-contact the treating physician, an ALJ cannot validly cite a lack of clinical data or explanation to reject the treating physician's opinion. See <u>Cleveland v. Apfel</u>, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000) (remanding case to ALJ for failure to re-contact treating physician before rejecting opinion and stating, "When the opinion submitted by a treating physician is not adequately supported by clinical findings, the ALJ must attempt, <u>sua</u> <u>sponte</u>, to develop the record further by contacting the treating physician to determine whether the required information is available"); see <u>also</u> <u>Corey v. Barnhart</u>, 2002 WL 663130, at *5 (S.D. Ind. March 14, 2002) ("The ALJ discredited Dr. Ciulla's opinion because of the lack of objective findings, and there is no indication in the record that the ALJ recontacted Dr. Ciulla to find out whether he had any findings or other information to support his opinion. The ALJ's failure to do so was error.").

Here, the ALJ erred in citing a lack of objective findings to reject Dr. Pak's opinions for two reasons. First, the ALJ rejected Dr. Pak's opinion without first re-contacting him to determine whether, in fact, clinical data existed to support his opinion. Second, the medical findings in the record arguably lend support to Dr. Pak's assessment. For instance, Thomas E. Mroz, M.D., an orthopedic consultative examiner, diagnosed plaintiff with neck and low back pain and noted that plaintiff's cervical spine x-rays showed

C-24 posterior surgical fusion and degenerative changes.[1]  (AR at 123).
On June 1, 1999, plaintiff underwent an anterior cervical diskectomy
with fusion at C5 - C6 and C6 - C7 using homologous fibular graft
microdissection.  (AR at 162).  In follow-up examinations on July 22,
1999 and September 2, 1999, Winston C. San Agustin, M.D., the
physician who performed the surgical procedure, noted that plaintiff's
range of motion of his neck was restricted, but that he could return
to light duty work.  (AR at 159, 160).  On July 28, 2005, a MRI Report
noted the following results:

    1.    Multiple levels of surgical anterior interbody fusion at C5
- C7, and posterior element surgical fusion at C2 - C4.  The
osseous proliferation at C5 - C6 leads to effacement of the
cervical spinal cord.  The posterior element fusion leads to
spinal canal narrowing posteriorly at C3 - C4.

    2.    Multiple levels of annular bulge at C4 - C5, C7 - T1, and T1
- T2 as described.  There is bilateral foraminal narrowing
and effacement of the cervical spinal cord as described.

    3.    The high signal intensity within the spinal cord on T2
images and thinning of the spinal cord at C6 is likely
representative of chronic myelomalacia from prior trauma,
and longstanding degenerative changes affecting the spinal
cord.  Clinical correlation is required.

    4.    Alterations in cervical spine alignment as described.
(AR at 273).  In an accompanying report, Kathleen L. Linaker, D.C.,

---

[1]  Contrary to Dr. Pak's assessment, however, Dr. Mroz
observed that plaintiff could touch his toes without difficulty
and did not require the use of an assistive device for
ambulation.  (AR at 122, 121).  Dr. Pak had opined that plaintiff
could never stoop or bend, nor crouch or squat.  (AR at 143).

found that plaintiff showed a three percent normal extension range of motion, 40 percent normal flexion range of motion with overall 20 percent total normal range of flexion extension, and multiple surgical fusions and degeneration.   (AR at 274).   Similarly, P.A. Ballard, D.C., also reviewed the MRI Report, as well as five film x-rays of plaintiff's cervical spine.   (AR at 277-79).   Dr. Ballard opined that plaintiff suffers from upper extremity weakness and loss of upper limb motor control or movement, plaintiff's movement of his cervical spine is severely restricted and will only get worse with time, plaintiff will progressively weaken in the upper extremities which will result in permanent paralysis of the upper extremities, and that plaintiff is disabled.   (AR at 279).   The findings of Dr. Ballard comport with the serious restrictions assessed by Dr. Pak.   Thus, to the extent the ALJ rejected Dr. Pak's assessments for lack of clinical or laboratory evidence, the objective findings in the record were not clearly inconsistent with Dr. Pak's assessed limitations.

Accordingly, the ALJ erred in citing to a lack of supporting objective evidence to give limited weight to Dr. Pak's conclusions about plaintiff's physical limitations.

**2.   Inconsistent with the Record**

The ALJ rejected Dr. Pak's opinion, in part, because the findings were inconsistent with the record.   Specifically, the ALJ notes that plaintiff underwent a "relatively benign thorough physical exam just one year prior" and that the record lacked any substantive findings in the interim.   (AR at 24).   As discussed below, the ALJ's ground lacks merit.

///

///

A treating physician's opinion is not conclusive as to either functional limitations or the ultimate issue of disability.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  The proper weight that an ALJ should give to a treating physician's opinion depends on whether sufficient data supports the opinion and whether the opinion comports with other evidence in the record.  See 20 C.F.R. §§ 404.1527, 416. 927.

Here, the medical findings in the record arguably support the treating physician's assessments.   Most significantly, the most recent MRI findings in July of 2005 suggests serious impairments, as noted in the prior section.   Two chiropractors, moreover, opined serious, if not disabling, restrictions involving plaintiff's range of motion.[2]   While medical reports in the year preceding Dr. Pak's assessment indicate only mild restrictions, subsequent records exist to support his assessment.  As such, the medical evidence was not so

----

[2]  Social security regulations do not include chiropractors as a "source[] who can provide evidence to establish an impairment."  20 C.F.R. 404.1513(a).  But 20 C.F.R. Section 404.1513, subdivision (d)(1) explicitly states that an ALJ may consider a chiropractor's opinion to determine how a plaintiff's impairment affects the plaintiff's ability to work:

> Other sources.  In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.  Other sources include, but are not limited to--
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists)

20 C.F.R. 404.1513(d)(1).

overwhelming as to support the ALJ's decision to reject the treating physician's assessment without re-contacting him first.  Moreover, the objective findings in the record are not clearly inconsistent with the physician's assessed limitations.

**3.  Bias of the Treating Physician**

Finally, the ALJ implied that Dr. Pak assessed significant functional limitations on plaintiff because he was acting "more as an advocate for his patient in his attempt to obtain benefits."  (AR at 33).  "[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it."  Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998); see also Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (purpose for which medical report is obtained is not legitimate basis for rejecting it as report procured by claimant is entitled to no less weight than report procured by Commissioner: "The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits") (quotation omitted); cf. Saelee, 94 F.3d at 522-23 (rejecting treating physician's opinion that was created at request of claimant because doctor's opinion letter varied from his treatment notes and "was worded ambiguously in an apparent attempt to assist [the claimant] in obtaining social security benefits").  Although an ALJ may consider the purpose for which an opinion was solicited, he cannot rely solely upon the purpose behind the opinion to reject the opinion.  Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998) ("Evidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could, however, form a legitimate basis for evaluating the reliability of the report.").

Here, the ALJ erred in citing the purpose for which Dr. Pak rendered his opinion in rejecting that opinion.  Unlike <u>Saelee</u>, nothing in the record suggests that Dr. Pak ambiguously worded his opinion to assist plaintiff.  Nor does the ALJ cite any instance or evidence indicating as much.  Dr. Pak's functional assessments, moreover, comport with the most recent MRI report and accompanying findings of the chiropractors who evaluated the report.  No evidence exists in the record to support the ALJ's contention that Dr. Pak completed the Residual Functional Capacity Questionnaire in an attempt to assist plaintiff in obtaining benefits, nor the ALJ cite any.  As such, the ALJ's reference to Dr. Pak's motivation in completing his assessment on plaintiff's functional limitations does not constitute grounds for giving limited weight to his opinion.

**C.**   **<u>Remand is Required to Remedy the Defects in the ALJ's Decision</u>**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court.  <u>McAlister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional proceedings would remedy the defects in the ALJ's decision, and where the record should be developed more fully.  <u>McAlister</u>, 888 F.2d at 603; <u>Rodriquez v. Bowen</u>, 876 F.2d 759, 763 (9th Cir. 1990).  An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, <u>see Gamble v. Chater</u>, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, <u>see Schneider v. Commissioner of the Social Security Administration</u>, 223 F.3d 968, 976 (9th Cir. 2000); <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits.  <u>See Smolen</u>, 80 F.3d at 1292.

Here, the Court finds remand appropriate.  The reasons cited by the ALJ in support of limiting the weight of the treating physician's opinion are insufficient.  On remand, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record to support her decision to give little weight to the limitations assessed by the treating physician.[3]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: July 31, 2006

                                        _____/s/_____
                                        JENNIFER T. LUM
                                        UNITED STATES MAGISTRATE JUDGE

---

[3] In the Joint Stipulation, plaintiff also contends that the ALJ erred by failing to properly consider the testimony of plaintiff, failing to find that plaintiff suffered from a severe mental impairment, and improperly relying on the testimony of the vocational expert.  Depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again.  In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.